UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHELSEA V.,[1]

                                             Plaintiff,              Case # 20-CV-501-FPG

v.                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.

## INTRODUCTION

Plaintiff Chelsea V. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 16. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In May 2017, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 80-81, 90-91. She alleged disability since July 2016 due to back issues and herniated discs. *Id.* In March 2019, Administrative Law Judge Eric Eklund ("the ALJ") issued a

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

decision finding that Plaintiff is not disabled. Tr. 21-31. In February 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff has severe impairments of obesity and lumbar degenerative disc disease with disc herniation at L3-4 and L4-5 with annular tear. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment. Tr. 24.

Next, the ALJ determined that Plaintiff retains the RFC to perform sedentary work, except that she can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, and kneel; and cannot be exposed to extreme cold, excessive vibration, moving machinery, unprotected heights, or ambulation over wet, uneven, or irregular surfaces. Tr. 24. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 29. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 30-31. The ALJ therefore found that Plaintiff is not disabled. Tr. 31.

## II. Analysis

Plaintiff argues that remand is warranted on two grounds. First, she contends that the ALJ erred when he failed to include a sitting limitation that consultative examiner Samuel Balderman, M.D., identified in his medical opinion. ECF No. 10-1 at 12-14. Second, Plaintiff asserts that the ALJ erroneously discounted her subjective complaints of pain. *Id.* at 14-20.

### a. Dr. Balderman's Sitting Limitation

Dr. Balderman conducted a consultative internal medicine examination of Plaintiff on July 17, 2017. Tr. 397. After reviewing Plaintiff's medical history and examining her, Dr. Balderman diagnosed Plaintiff with obesity and lumbar spine disease. Tr. 399. He opined that Plaintiff was moderately limited "in repetitive bending and lifting," and moderately limited in "prolonged standing and prolonged sitting." *Id.* The ALJ evaluated Dr. Balderman's opinion together with the opinion of state agency consultant G. Feldman, M.D. Tr. 29. Dr. Feldman opined that Plaintiff could stand/walk (with normal breaks) for about six hours each workday, and could sit (with normal breaks) for about six hours each workday. Tr. 85. As the ALJ noted, Dr. Feldman's findings would be consistent with a "light-work" exertional level, which requires walking and standing for approximately six hours of an eight-hour workday. Tr. 29; *see Edwards v. Berryhill*, No. 17-CV-1247, 2019 WL 2340953, at *5-6 (W.D.N.Y. June 3, 2019).

The ALJ reviewed both Dr. Balderman's and Dr. Feldman's opinions and found them to be "partly consistent with the record." Tr. 29. While agreeing that the opinions "demonstrate substantial restriction," the ALJ believed that the record warranted "additional restriction to limit [Plaintiff's] pain triggers." *Id.* As a result, the ALJ limited Plaintiff to sedentary work, which requires the ability to sit for six hours and stand/walk for two hours. *See Edwards*, 2019 WL 2340953, at *5.

Plaintiff's challenge to the ALJ's handling of Dr. Balderman's sitting limitation is not entirely clear, but her theory appears to be as follows: Because the ALJ stated that "additional restrictions" were warranted beyond those identified by Dr. Balderman and Dr. Feldman, the ALJ was obliged to include an extra sitting limitation that was more restrictive than sedentary work. Nevertheless, the ALJ failed to include any sitting limitation. "As such, the ALJ erred in failing

5

to include a limitation on sitting, and in failing to express why that limitation was not included despite finding Plaintiff had additional limitations beyond what Dr. Balderman had opined to." ECF No. 10-1 at 12; *see also id.* at 2 (framing the issue presented as whether "the ALJ err[ed] in not including a sitting limitation, despite finding Plaintiff more limited than the opinion of Dr. Balderman, who did opine Plaintiff had moderate limitations in sitting").

Plaintiff's argument rests on a misinterpretation of the ALJ's decision.[4] As the Court reads the decision, the ALJ construed Dr. Balderman's "moderate" limitation in "prolonged" sitting to mean that Plaintiff could sit for up to six hours each workday (with normal breaks). *See* note 4, *supra*. The same goes for Dr. Balderman's "moderate" limitation in "prolonged" standing. This is why the ALJ analyzed Dr. Balderman's and Dr. Feldman's opinion together: he read both to find that Plaintiff could stand and sit for six hours per workday, which would be consistent with light work—or, as the ALJ put it, "light exertion." Tr. 29. Having interpreted the opinions in that manner, the ALJ disagreed that Plaintiff had the ability to perform the standing or walking requirements of light work. Instead, he found that Plaintiff could perform sedentary work, which still required her to sit for up to six hours per day but only required her to stand and walk for up to two. *Id.*; *see also Edwards*, 2019 WL 2340953, at *5. In other words, when he found the opinions "partly consistent with the record," the ALJ agreed with Dr. Balderman's and Dr. Feldman's

---

[4] To the extent Plaintiff is simply arguing that a "moderate" limitation in "prolonged" sitting is more restrictive than a limitation to sedentary work, she is incorrect. Sedentary work only requires an individual to "remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals." *Natasha D. v. Comm'r of Soc. Sec.*, No. 19-CV-515, 2020 WL 1862966, at *9 (N.D.N.Y. Apr. 13, 2020). It does not require a worker "to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). As a result, "an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a claimant can perform sedentary work." *Kimberley H. v. Comm'r of Soc. Sec.*, No. 19-CV-6766, 2021 WL 1054373, at *4 (W.D.N.Y. Mar. 19, 2021) (collecting cases); *Barone v. Comm'r of Soc. Sec.*, No. 19-CV-482, 2020 WL 3989350, at *4 (W.D.N.Y. July 15, 2020) (same); *Brink v. Colvin*, No. 14-CV-940, 2017 WL 2531711, at *2 (W.D.N.Y. June 12, 2017).

opinions insofar as they limited Plaintiff to sitting for up to six hours per workday, and disagreed with them insofar as they suggested that Plaintiff could stand/walk for six hours each workday. *See* Tr. 29.

Thus, Plaintiff's interpretation—that the ALJ believed Plaintiff required an extra sitting limitation greater than that identified by Dr. Balderman—is incorrect. To the contrary, the ALJ crafted an RFC that was consistent with Dr. Balderman's opinion. *See* Tr. 29.

Furthermore, the Court rejects Plaintiff's argument that the ALJ's analysis was not sufficiently articulated or explained. *See, e.g.*, ECF No. 10-1 at 13-14; ECF No. 17 at 2-3. While not fully explicit, the Court can adequately glean the ALJ's rationale, which is sufficient to afford meaningful judicial review. *See Vacanti v. Comm'r of Soc. Sec.*, No. 18-CV-368, 2020 WL 836387, at *2 (W.D.N.Y. Feb. 20, 2020) ("[A]n ALJ's failure to fully express her reasoning does not justify remand so long as the Court can glean the rationale of the decision.").

Therefore, remand is not warranted on this ground.

### b. Subjective Complaints of Pain

Next, Plaintiff argues that the ALJ erroneously discounted her subjective complaints of pain. ECF No. 10-1 at 14-20. The Court is not persuaded.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). "The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could

7

reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). "That requirement stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability. If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (internal quotation marks, citations, and brackets omitted). The ALJ must consider several other factors when making a credibility assessment, including the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson v. Astrue*, No. 05-CV-1061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (internal quotation marks and citation omitted).

At the hearing, Plaintiff alleged an extreme level of pain and infirmity that persisted at all times, whether sitting, standing, walking, or lying down. Plaintiff alleged that she cannot drive, Tr. 44, and when transported by car she needs to periodically stop and walk around to relieve her pain. Tr. 60-61. Plaintiff claimed that, due to pain she feels when bending, she is unable to play with her two children (a one-year old and a five-year old). Tr. 48. She cannot perform many household tasks, including laundry, sweeping, or mopping, and she cannot take care of her cat and two dogs. Tr. 49, 62. Plaintiff alleged that she is unable to take care of her one-year old's basic needs, including getting him dressed, feeding him, and changing his diaper—she must rely on her husband and parents to do those tasks. Tr. 53. Indeed, Plaintiff alleged that she cannot take care of many of her own needs—while she can shower, her husband has to "shave [her] legs," put on her socks and shoes, and put her pants on for her. Tr. 61. Plaintiff is only able to sleep approximately two hours each night due to her back pain. Tr. 56-57. Plaintiff stated that she can

8

only walk "three houses down" the street before the pain becomes unbearable. Tr. 58. On a scale from one to ten, where one is "minimal discomfort" and ten is "you need to go to the emergency room," Plaintiff claimed that her pain is a "9/10" every day, but sometimes goes "past a ten" when she "tr[ies] to bend or something." Tr. 60.

Despite her alleged infirmities, Plaintiff only treats her pain with Tylenol and a heated pad. Tr. 54. She testified that she cannot afford recommended surgery or pain medication, Tr. 46, 48, and that other interventions—physical therapy, injections, emergency-room visits, chiropractic treatments—did not help. Tr. 47, 60. Because of the lack of sleep and her pain, Plaintiff testified that she is unable to exercise, Tr. 49, and has consequently gained "a lot" of weight since the onset date. Tr. 57. She estimates that she gained "at least 125 pounds." *Id.*

The ALJ found that Plaintiff's complaints of pain were not fully consistent with "the medical treatment note[s] of record and [her] level of functioning." Tr. 25.

In July 2016, Plaintiff went to the emergency room for her back pain and reported "10/10" pain. Tr. 1083. The Physician's Assistant observed that she was "in no distress," could quickly "sit up from a lying position on [the] stretcher with no apparent discomfort," and move from "a lying to stand position with no difficulty." *Id.* He noted "some tenderness" in the lumbar area, but a straight leg raise test was negative. *Id.* The Physician's Assistant concluded that "[t]here are no 'red flag findings' on her history or physical" and that Plaintiff "is able to return to work." *Id.* Treating Nurse Practitioner Gary Mann similarly noted, during a July 2016 visit, that despite complaints of "8/10" pain, Plaintiff had a "fluid non-antalgic gait," moved "with fluidity and briskly to ascend and descend the examination table," and could sit "fully erect with her legs hanging down" on the examination table. Tr. 1071. He declined to prospectively give Plaintiff a doctor's note excusing her from work, stating that he did not "see enough today, objectively, to

9

give her a note saying she will be off work." *Id.* At an appointment that same month, Plaintiff alleged "9/10" pain in her low back, but showed no signs of acute distress and walked normally with a well-balanced gait. Tr. 464, 466.

Medical records from Spring through Summer 2017 show similar discrepancies. At the consultative examination with Dr. Balderman, Plaintiff alleged moderate, constant lumbar spine pain. Tr. 397. Dr. Balderman observed that she "appeared to be in no acute distress," with a normal gait and the ability to "walk on heels and toes without difficulty" and "rise from [a] chair without difficulty." Tr. 398. As discussed above, Dr. Balderman opined that Plaintiff had several, moderate limitations in bending, lifting, prolonged standing, and prolonged sitting. Tr. 399. At a July 2017 chiropractic independent medical examination, Plaintiff alleged constant "9/10" pain and an inability to sit longer than one hour. Tr. 700-01. Nevertheless, the examiner noted that Plaintiff moved about "without any obvious limp or hitch," was "comfortable being seated through the examination," appeared to be in "no immediate distress," and completed "the physical examination with little discomfort." Tr. 701. The examiner found that Plaintiff had no restrictions. Tr. 702.

Finally, at a February 2018 appointment, Plaintiff complained of constant "10/10" pain, but the notes indicate that Plaintiff had no signs of acute distress, walked with a "slightly" antalgic gait but walked normally heel to toe, and exhibited point tenderness in her lower back. Tr. 503-05. The doctor opined that Plaintiff was temporarily disabled. Tr. 507. There are no relevant medical records dated after February 2018. *See* Tr. 27.

The ALJ also noted some of Plaintiff's allegations were inconsistent or implausible. While she claimed that she had gained "125 pounds" due to her inactivity and pain, the record showed that she had actually lost four pounds since the onset date. Tr. 27. She claimed that she was

10

essentially unable to take care of her one-year old, but she was, for portions of the day, the only adult in the house. Tr. 28. Plaintiff consistently complained of constant, "emergency-room" level pain, and yet did not obtain any treatment besides Tylenol and a heating pad. *Id.*

After reviewing the medical record, the ALJ concluded that Plaintiff's reported limitations—along with the other evidence of record—merited a restriction to sedentary work, insofar as such work would help to limit her "pain triggers." Tr. 29. But he rejected the full extent of Plaintiff's claimed limitations. Tr. 25, 29.

Plaintiff now argues that several of the ALJ's reasons for rejecting her pain complaints were erroneous.

First, she contends that the ALJ mischaracterized her testimony by calling her the "primary care provider" at home, and that, regardless, the mere fact that she performed household chores and tasks does not "contradict a claim for disability." ECF No. 10-1 at 17.

While the ALJ's phrasing is perhaps not precise, the Court does not interpret it as a mischaracterization of Plaintiff's testimony. *See Joyner v. Comm'r of Soc. Sec.*, No. 05-CV-675, 2009 WL 5214949, at *4 (N.D.N.Y. Dec. 28, 2009) (noting the ALJ's responsibility to "carefully review [a claimant's] statements to avoid mischaracterizing [her] testimony"). Consistent with Plaintiff's testimony, the ALJ explicitly acknowledged her claim that her husband and parents helped significantly with household chores and childcare. *See* Tr. 28, 48, 53. The Court understands the ALJ's point to be that, at certain times of the day, Plaintiff was the only adult at home with a one-year-old child, two dogs, and a cat, during which times she acted as the "primary care provider." Tr. 28. That is a reasonable interpretation of Plaintiff's testimony, Tr. 48, 53, and the ALJ was obliged to consider Plaintiff's daily activities in assessing her subjective complaints of pain. *See* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ could reasonably conclude that Plaintiff's

role as the sole caretaker (at times) suggested a degree of responsibility and activity inconsistent with her claim that she was in constant, "emergency-room" level pain and could not engage in even basic tasks of self- and home-care. *See Smead v. Comm'r of Soc. Sec.*, No. 13-CV-185, 2014 WL 2967601, at *9-10 (D. Vt. July 1, 2014) (ALJ could reasonably reject claimant's claim that she was "close to bedridden during the alleged disability period," given that, *inter alia*, she undertook "caretaking responsibilities for her paraplegic brother"); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ reasonably relied in part on claimant's ability "to care for his one-year-old child" to discount claimant's subjective complaints of pain).

Second, Plaintiff faults the ALJ for relying on the fact she is enrolled in an online college-level educational program and completes about one hour of coursework per day. *See* Tr. 28, 42-43. Plaintiff asserts that one hour of coursework each day does not prove that she can work on a sustained basis for eight hours each workday, five days per week. ECF No. 10-1 at 17. It may be true that such coursework does not definitively *prove* Plaintiff's ability to work, but the ALJ could permissibly consider it as one factor among many in evaluating the consistency of Plaintiff's subjective complaints with the record as a whole. *See Woods v. Berryhill*, No. 17-CV-400, 2018 WL 4362085, at *5 (W.D.N.Y. Sept. 13, 2018) (concluding that "the ALJ was well within his discretion in considering Plaintiff's part-time work and efforts to attend college as being indicative of a greater ability to function"). Here, the ALJ could reasonably find Plaintiff's ability to complete coursework on a daily basis and achieve "B level grades" to be inconsistent with her allegation that she was in constant, "emergency-room" level pain and was unable to perform even basic tasks around the house. Tr. 43, 57-58.

Third, Plaintiff contends that the ALJ erroneously rejected her complaints on the ground that she had not obtained treatment since February 2018. ECF No. 10-1 at 17-19; Tr. 27-28.

12

Plaintiff points out that she did not obtain further treatment because she could not afford it. Tr. 46-48, 55. Assuming *arguendo* that the ALJ erred in this respect, any such error is harmless. *See Sarah C. v. Comm'r of Soc. Sec.*, No. 19-CV-1431, 2021 WL 1175072, at *6 (N.D.N.Y. Mar. 29, 2021) (ALJ's erroneous consideration of a factor in assessing claimant's credibility was harmless where factor "was merely one of several pieces of evidence on which the ALJ relied to reach her decision"); *Scarpino v. Colvin*, No. 15-CV-6231, 2016 WL 5372493, at *15 (W.D.N.Y. Sept. 26, 2016) (ALJ's misstatement about claimant's mental health treatment did not justify remand where "[t]he remaining evidence in the record identified by the ALJ was sufficient to support his adverse credibility determination").

The ALJ employed the proper standards and considered a wide body of evidence in assessing Plaintiff's subjective complaints. He properly considered the objective medical findings and Plaintiff's observed behavior at appointments and exams, Tr. 25-28, Plaintiff's inconsistent statements about her weight and level of activity, Tr. 27, Plaintiff's daily activities and responsibilities, Tr. 28, and the medical opinions in the record. Tr. 28-29; *see also* 20 C.F.R. § 404.1529(c)(2)-(4). That evidence revealed a level of functioning—in particular, a lack of debilitating, constant, severe pain—that was inconsistent with Plaintiff's subjective reports. *See Dougherty-Noteboom v. Berryhill*, No. 17-CV-243, 2018 WL 3866671, at *6 (W.D.N.Y. Aug. 15, 2018) (upholding ALJ's credibility finding in light of the "discrepancies in plaintiff's statements" and "the inconsistencies across the record"). Still, he credited Plaintiff's allegations in part and crafted a more limited RFC to accommodate her complaints. Tr. 29; *see also Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 499, 506 (W.D.N.Y. 2020) ("[T]he ALJ was free to credit some of Plaintiff's statements while discrediting others, especially in light of the discrepancies between her extreme complaints and the comparatively unremarkable longitudinal medical record." (internal

13

quotation marks and brackets omitted)). Substantial evidence supports the ALJ's credibility determination, and so this Court must uphold it.

Accordingly, Plaintiff's arguments concerning her subjective complaints do not justify remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 28, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court